## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## ROCK HILL DIVISION

| | |
|---|---|
| Nationwide Property and Casualty Insurance Company, | Civil Action No.: 0:17-cv-01956-JMC |
| Plaintiff, | |
| v. | **ORDER AND OPINION** |
| Thomas L. Evans, *as attorney in fact for Thomas W. Evans, an incapacitated adult*, and Ambria Jones | |
| Defendants. | |

Before the court for review in this declaratory judgment action is Plaintiff Nationwide Property and Casualty Insurance Company's ("Plaintiff") Motion for Summary Judgment (ECF No. 22). Plaintiff asserts it is entitled to summary judgment because an automobile policy issued by Plaintiff to Defendant Ambria Jones' mother does not provide liability coverage for a vehicular accident involving Defendants. (*Id.* at 2.) For the reasons that follow, the court **GRANTS** Plaintiff's Motion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On February 22, 2017, Defendant Thomas L. Evans, attorney in fact for Thomas W. Evans,[1] sued Defendant Jones for negligence in the Court of Common Pleas in York County, South Carolina. (ECF No. 1-1 at 3 ¶ 14.) Approximately three (3) years earlier, on March 2, 2014, Defendant Jones and Evans were involved in a vehicular accident that left Evans "mentally impaired and physically incapacitated." (*Id.* at 1–2.) In his Complaint, Defendant Evans alleged that on March

---

[1] Thomas L. Evans is the son of Thomas W. Evans, who was injured in the car accident at issue in this case. (ECF No. 7 at 5 ¶ 32.) Throughout this Order, Thomas L. Evans is referred to as "Defendant Evans," and Thomas W. Evans is referred to as "Evans."

1

2, 2014, Evans was a passenger in a 1997 Dodge Dakota pickup truck traveling south on a highway in York County. (ECF No. 1-1 at 5.) At the same time and on the same highway, Defendant Jones was a passenger in a 2007 Honda traveling north and being driven by Jimesha McLendon. (*Id.*) Defendant Evans alleges that, "As [McLendon] began to approach the car in which [Evans] was a passenger, Defendant [Jones] was engaging in horseplay with [McLendon] and attempted to grab the steering wheel of the car in which [Jones] was in the passenger seat." (*Id.* at ¶ 8.) Defendant Evans claims McLendon then lost control of the car, crossed the center line of the highway, and collided head on with the car in which Evans was a passenger, causing Evans to be thrown from the car. (*Id.* at ¶ 9, 11.) In her Answer to Defendant Evans' Complaint,[2] Defendant Jones denied engaging in horseplay with McLendon and attempting to grab the steering wheel. (ECF No. 31-3 at 1 ¶ 8, 2 ¶ 10.)

Prior to the March 2, 2014 accident, Plaintiff issued a North Carolina automobile policy to Defendant Jones' mother, Antonja Brewton, on a 2009 Nissan Altima (the "Policy"), which was effective at the time of the accident. (ECF No. 22-2 at 1.) The 2009 Nissan Altima was the only car covered by the Policy. (*Id.* at 2.) The Policy insured "family member[s]," which, under the terms of the Policy, are defined as "person[s] related to you by blood, marriage, or adoption who [are] a resident of your household. This includes a ward or foster child." (*Id.* at 6.) The Policy further provides,

> We will pay damages for *bodily injury* or *property damage* for which any *insured* becomes legally responsible because of an auto accident. . . . We have no duty to defend any suit or settle any claim for *bodily injury* or *property damage* not covered under this policy.

---

[2] For the remainder of this Order, the state court Complaint will be referred to as the "Underlying Complaint."

(*Id.* at 7.) The Policy also includes the following exclusion: "We do not provide Liability Coverage for any insured . . . [u]sing a vehicle without a reasonable belief that that *insured* is entitled to do so. This exclusion does not apply to a *family member* using your *covered auto* which is owned by you." (ECF No. 22-2 at 8.)

On July 24, 2017, Plaintiff filed this declaratory judgment action. (ECF No. 1 at 2). Plaintiff seeks a declaration from the court that (1) "the interpretation of the insurance contract will be governed by North Carolina law" (*id.* at 4 ¶ 16); (2) "the acts of Defendant Jones, as alleged in the Underlying Complaint, do not trigger the liability of the . . . [P]olicy" (*id.* at 5 ¶ 21); and (3) "the . . . [P]olicy excludes liability coverage for any damages sustained" in the March 2, 2014 accident (*id.* at 6 ¶ 26). Plaintiff argues it is entitled to these declarations because (1) "[t]he Nationwide [Auto] [P]olicy was issued in North Carolina to a North Carolina Resident and insured a 2009 Altima registered and principally garaged in North Carolina" (*id.* at 4 ¶ 15); (2) "[t]he . . . [P]olicy provides liability coverage to insureds who become legally responsible for damages for their 'ownership, maintenance, or use of an auto'. . . . [and] [t]he conduct alleged in the Underlying Complaint to have been committed by [Defendant] Jones does not constitute the 'ownership, maintenance or use' of the 2007 Honda" (*id.* at 5 ¶ 19–20); and (3) "Defendant Jones did not have a reasonable belief that she was entitled to grab the steering wheel of the 2007 Honda while she was riding as a passenger in th[at] [car]" (*id.* at 5 ¶ 25).

On August 22, 2017, Defendant Evans filed an Answer to Plaintiff's Complaint. (ECF No. 7.) Defendant Evans asserts he is a citizen and resident of North Carolina, not South Carolina, as Plaintiff alleges. (*Id.* at 2 ¶ 3.) Defendant Evans further argues that Defendant Jones' mother, the named insured on the Policy, is a necessary party "and resident of North Carolina. As such, properly brought, this case would lack complete diversity and should be commenced in South Carolina [s]tate [c]ourt." (*Id.* at 2 ¶ 4.) (*See also id.* at 5 ¶ 31–33, 6 ¶ 34–35.) Additionally, Defendant Evans asserts (1)

3

Plaintiff's Complaint fails to state a claim upon which relief can be granted, and (2) Plaintiff incorrectly interpreted the Nationwide Auto Policy and that a correct interpretation would entitle Defendant Evans to payment for his father's injuries. (*Id.* at 5 ¶ 29, 30.)

On September 14, 2017, Defendant Jones filed her Answer to Plaintiff's Complaint. (ECF No. 12.) Defendant Jones "denies she was engaging in any type of horseplay" with McLendon, but admits McLendon lost control of the car and crossed the center line, causing the March 2, 2014 accident.[3] (*Id.* at 12 ¶ 8–9.)

---

[3] In her Answer, Defendant Jones also asserts McLendon, whom she refers to as "Plaintiff," should be barred from recovery because McLendon was

> guilty of carelessness, negligence, gross negligence, and recklessness, which conduct combined and concurred with any such conduct on the part of . . . Defendant [Jones] in bringing about the [March 2, 2014 Accident] and in proximately causing the injuries and/or damages complained of by [Evans], so as to bar . . . [McLendon] from any recovery herein, or in the alternative to reduce appropriately any recovery.

(ECF No. 12 at 2–3 ¶ 19.) The court assumes Defendant Jones is referring to McLendon as "the Plaintiff" because in the same paragraph Defendant Jones states,

> The conduct on the part of the Plaintiff is set forth in one or more of the following particulars, to wit:
>
> (a) in utilizing her cellular phone while driving the vehicle in question;
>
> (b) in engaging in 'horseplay' with [Defendant] Jones while driving the vehicle in question;
>
> (c) in failing to keep her vehicle under proper control;
>
> (d) in failing to use that degree of care and caution that a reasonable and prudent person would have used under the circumstances then and there existing;
>
> (e) in such other particulars as may be developed through further discovery.

On May 8, 2018, the parties stipulated and agreed to the following facts:

1. The automobile accident occurred on March 2, 2014 at 3:50 p.m.

2. At the time of the accident, Thomas W. Evans was a passenger in a 1997 Dodge Dakota pick-up truck being driven by Harper McCoy in the southbound lane of US Highway 21 in York County, South Carolina.

3. At the time of the accident, Ambria Jones was a passenger in a 2007 Honda being driven by Jimesha McLendon in the northbound lane of US Highway 21 in York County, South Carolina.

4. Jimesha McClendon states that as the two vehicles approached one another from opposite directions, Ambria Jones grabbed the steering wheel of the 2007 Honda from Jimesha McLendon.

5. Jimesha McClendon states as a result of Jones grabbing the steering wheel, McLendon lost control of the Honda and crossed the center line of US Highway 21 causing the 2007 Honda to strike the 1997 Dodge driven by Harper McCoy in a head on collision.

6. Jones did not intend to cause the collision.

7. Ambria Jones was not asked to grab the steering wheel and Jimesha McLendon did not give express or implied permission for Ambria Jones to grab the steering wheel.

8. As a result of the collision, Thomas W. Evans was ejected from McCoy's vehicle and suffered injuries.

(ECF No. 20 at 1–2.)

On May 8, 2018, Plaintiff moved for summary judgment. (ECF No. 22.) Defendant Jones responded to Nationwide's Motion on May 15, 2018. (ECF No. 25.) On May 21, 2018, Defendant Evans filed a Memorandum of Law in Opposition ("Response in Opposition") to Nationwide's

---

(*Id.* at 3 ¶ 19.) However, the purpose of these allegations is unclear to the court, as McLendon is not a party to this declaratory judgment action. Therefore, the court construes these assertions as allegations that McLendon, and not Defendant Jones, caused, or contributed to causing, the March 2, 2014 accident.

5

Motion. (ECF No. 28.) On May 29, 2018, Nationwide filed a Reply to Defendant Evans' Response in Opposition. (ECF No. 31.)

## II. JURISDICTION

The court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) based on Plaintiff's allegations that the action is between citizens of different states and/or countries and the amount in controversy is in excess of $75,000.00, exclusive of interest and costs. (ECF No. 1 at 1 ¶ 1–3, 2 ¶ 4–6.) Specifically, Plaintiff alleges it is an Ohio corporation with its principal place of business in Ohio, though it is authorized to sell insurance policies in North and South Carolina. (*Id.* at 1 ¶ 1.) Defendants are citizens of North Carolina. (ECF No. 12 at 1 ¶ 2; ECF No. 7 at 2 ¶ 3.) Plaintiff brings this action pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, and Federal Rule of Civil Procedure 57. (ECF No. 1 at 2 ¶ 5.) In this regard, the court is satisfied complete diversity exists between the parties[4] and the amount in controversy is sufficient to confer

---

[4] Defendant Evans argues that Defendant Jones' mother, who was not named by Nationwide as a party to this suit, but is the named insured on the Policy, is a necessary party to this action. (ECF No. 7 at 2 ¶ 4, 5.) Further, Defendant Evans asserts that because Defendant Jones's mother is a resident of North Carolina, complete diversity does not exist in this case and this action should be commenced in South Carolina state court. (*Id.*)
    "To determine whether a party should be joined, Rule 19 of the Federal Rules of Civil Procedure sets forth a two-step inquiry, examining: (1) whether the party is 'necessary' to the action under Rule 19(a); and (2) whether the party is 'indispensable' under Rule 19(b)." *Am. Gen. Life & Acc. Ins. Co. v. Wood*, 429 F.3d 83, 92 (4th Cir. 2005). The party who raises the defense bears the burden of proving "the person who was not joined is needed for a just adjudication." *Id.* (quoting 7 Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, *Federal Practice and Procedure* § 1609 (3d ed. 2001)).
    First, the court notes Defendant Evans "has failed to offer any explanation as to why he could not obtain complete relief" without the presence of Defendant Jones' mother. *Id.* Second, because, as Defendant Evans admits, joinder of Defendant Jones' mother would defeat complete diversity, thereby "depriv[ing] the court of subject-matter jurisdiction," she is not necessary to this action. Fed. R. Civ. P. 19(a)(1) ("A person who is subject to service of process and *whose joinder will not deprive the court of subject-matter jurisdiction* must be joined as a party . . . ." (emphasis added)). Therefore, the court concludes the absence of Ambria Jones' mother in this action does not deprive the court of jurisdiction.

jurisdiction on this court.[5]

### III. LEGAL STANDARD

Summary judgment is a drastic remedy and "should not be granted unless it is perfectly clear that there are no genuine issues of material fact in the case." *Ballinger v. N. C. Agr. Extension Serv.*, 815 F.2d 1001, 1004–05 (4th Cir. 1987). *See also* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248–49 (1986). A genuine question of material fact exists when, after reviewing the record as a whole, the court finds a reasonable jury could return a verdict for the non-moving party. *Newport News Holdings Corp. v. Virtual City Vision*, 650 F.3d 423, 434 (4th Cir. 2011).

When ruling on a summary judgment motion, a court must view the evidence in the light most favorable to the non-moving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123–

---

[5] Plaintiff's Complaint alleges, "The amount in controversy exceeds Seventy-Five Thousand and No/100 ($75,000.00) Dollars, exclusive of interests and costs, and there is complete diversity of citizenship . . . ." (ECF No. 1 at 2 ¶ 6.) Defendant Evans generally denied this allegation in his Answer. (ECF No. 7 at 2 ¶ 6.) However, Defendant Evans has put forth no evidence, nor has the court observed any evidence, in the record to support his position. Moreover, the limit of the Policy exceeds $75,000 (ECF No. 22-2 at 2), and in the Underlying Complaint, Defendant Evans alleges his father suffered severe injuries as a result of the March 2, 2014 accident (ECF No. 1-1 at 1 ¶ 2, 2 ¶ 11–12). Accordingly, because it does not "appear to a legal certainty that the claim is really for less than the jurisdictional amount," the court is satisfied it has jurisdiction as far as the amount in controversy is concerned. *Nutter v. New Rents, Inc.*, 945 F.2d 398 (Table), 1991 WL 193490, at *4 (4th Cir. 1991) (quoting *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 289 (1938)). *See also Davis v. Kia Motors Am., Inc.*, 408 F. App'x 731, 732 (4th Cir. 2011) ("In most [diversity] cases, the 'sum claimed by the plaintiff controls' the amount in controversy determination." (quoting *St. Paul Mercury Indem. Co.*, 303 U.S. at 288)); *Nutter*, 945 F.2d at *4 ("When examining the amount in controversy in a declaratory judgment action, '[t]he amount in controversy is the pecuniary result to either party which that judgment would produce.'" (quoting *Government Employees Insurance Co. v. Lally*, 327 F.2d 568, 569 (4th Cir. 1964))).

7

24 (4th Cir. 1990). The non-moving party may not oppose a summary judgment motion with mere allegations or denial of the movant's pleading, but instead must "set forth specific facts" demonstrating a genuine issue for trial. *See* Fed. R. Civ. P. 56(e). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson*, 477 U.S. at 252; *Shealy v. Winston*, 929 F.2d 1009, 1012 (4th Cir. 1991). All that is required to survive summary judgment is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 249.

## IV. ANALYSIS

At the outset, the court finds—as Plaintiff argues and Defendants do not dispute—that North Carolina law applies to the interpretation of the Nationwide Auto Policy. (*See* ECF No. 22-1 at 5, ECF No. 25, ECF No. 28.) Although the March 2, 2014 accident occurred in South Carolina, North Carolina law applies because South Carolina follows the rule of *lex loci contractus*: the law of the state where the contract was made governs the interpretation of the contracts. *See Unisun Ins. Co. v. Hertz Rental Corp.*, 436 S.E.2d 182, 184 (S.C. Ct. App. 1993) ("Unless the parties agree to a different rule, the validity and interpretation of a contract is ordinarily to be determined by the law of the state in which the contract was made. A contract of insurance is governed by the law of the state in which application for insurance was made, the policy delivered, and the contract formed." (citation omitted)).[6]

---

[6] The court acknowledges that

> the traditional rule of *lex loci contractus* is modified by S.C. Code Ann. § 38–61–10, . . . [which] provides: "All contracts of insurance on property, lives, or interests in this State are considered to be made in the state and all contracts of insurance the applications for which are taken within the State are considered to have been made within this State and are subject to the laws of this State."

*Heslin-Kim v. CIGNA Grp. Ins.*, 377 F. Supp. 2d 527, 530 (D.S.C. 2005) (quoting S.C. Code Ann. § 38–61–10). However, because the Policy does not insure "property, lives, or interests" in South

Under North Carolina law, "[I]t is well established . . . that as a matter of law the provisions of the [Motor Vehicle Safety and] Financial Responsibility Act [N.C. Gen. Stat. Ann. §§ 20-279.1–.39] are written into every automobile liability policy." *Integon Nat. Ins. Co. v. Ward ex rel. Perry*, 646 S.E.2d 395, 397 (N.C. Ct. App. 2007) (quoting *Nationwide Mut. Ins. Co. v. Webb*, 512 S.E.2d 764, 765 (N.C. Ct. App. 1999)). The North Carolina Supreme Court has found that "[t]he avowed purpose of the [Act] . . . is to compensate the innocent victims of financially irresponsible motorists." *Hoffman v. Great Am. All. Ins. Co.*, 601 S.E.2d 908, 912 (N.C. 2004) (quoting *Sutton v. Aetna Cas. & Sur. Co.*, 382 S.E.2d 759, 763 (N.C. 1989)). "The Act is remedial in nature and is 'to be liberally construed so that the beneficial purpose intended by its enactment may be accomplished.'" *Id.* (quoting *Sutton*, 382 S.E.2d at 763).

Relevant to this action, the Act mandates that a vehicle owner's liability insurance policy,

> Shall insure the person named therein and any other person, as insured, using any such motor vehicle or motor vehicles *with the express or implied permission of such named* insured, or any other persons in lawful possession, against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of such motor vehicle or motor vehicles . . . .

N.C. Gen. Stat. Ann. § 20-279.21(b)(2). The North Carolina courts have read a good faith requirement into this provision:

> "[A] person is in lawful possession of a vehicle . . . if he is given possession of the automobile by the automobile's owner or owner's permittee under a *good faith* belief that giving possession of the vehicle to the third party would not be in violation of any law or contractual obligation." *Belasco v. Nationwide Mut. Ins. Co.*, . . . 326 S.E.2d 109, 113, ([N.C.] 1985). "This implies not only that the owner or the owner's permittee must give possession to a third party in *good faith*, but also that the third party must take in *good faith* and without any notice of restrictions on his use." *Nationwide Mut. Ins. Co. v. Baer*, . . . 439 S.E.2d 202, 205 (N.C. 1994).

---

Carolina—the car insured by the Nationwide Auto Policy is "registered and principally garaged in North Carolina" (ECF No. 1 at 4 ¶ 15)—the court finds S.C. Code Ann. § 38–61–10 does not govern this action. *See Unisun*, 436 S.E.2d at 184 n.1 ("[W]e do not conceive S.C. Code Ann. § 38–61–10 . . . to require a different result, since, at the time the contract was made, the property and interests insured were in the State of New York.").

9

*N. C. Farm Bureau Ins. Co. v. Nationwide Mut. Ins. Co.*, 608 S.E.2d 112, 113 (2005) (emphasis added). In *Nationwide Mut. Ins. Co. v. Baer*, the North Carolina Court of Appeals found that a Nationwide automobile insurance policy incorporated this good faith requirement in an "exclusion requiring a covered person to have a reasonable belief that he is entitled to use the vehicle." 439 S.E.2d at 204 (holding the exclusion was consistent with section 20-279.21(b)(2) of the Act). The *Baer* court noted that "such language 'broadens the coverage which [the policy] provides beyond those who use the covered vehicle with permission. It now covers persons who have a *subjective*, reasonable belief that they are entitled to use the vehicle.'" *Id.* (emphasis added) (quoting *Aetna Cas. & Sur. Co. v. Nationwide Mut. Ins. Co. (Aetna I)*, 381 S.E.2d 874, 875 (N.C. Ct. App. 1989)). Thus, the good faith requirement has both a subjective and reasonableness element. *See id. See also Toole By & Through Welch v. State Farm Mut. Auto. Ins. Co.*, 488 S.E.2d 833, 835–36 (N.C. Ct. App. 1997) (finding "the standard to be subjective in nature—i.e., whether *that* person had a 'subjective, reasonable belief that they are entitled to use the vehicle.'" (quoting *Aetna I*, 381 S.E.2d at 875));[7] *Aetna Cas. & Sur. Co. v. Nationwide Mut. Ins. Co. (Aetna II)*, 392 S.E.2d 377, 379 (N.C. 1990) ("The question under the policy is not one of legality-whether the operator had legal permission of the owner, or legal permission from the state in the form of a valid driver's license; rather, it is a question of fact-did the operator have a reasonable belief that, at the time of the accident, he was entitled to drive the vehicle? In such cases, the ultimate question is one of

---

[7] In *Toole*, the court went on to find that

> in light of the personal relationship between plaintiff Toole and Randall Galloway; Randall Galloway's representation that he had an ownership interest in the truck; plaintiff Toole's prior use of the vehicle; and the failure of either Randall Galloway or Ernest Galloway to forbid plaintiff Toole's use of the vehicle, we find no genuine issue of material fact as to whether plaintiff Toole had a "subjective, reasonable belief" that she was entitled to use the Galloway vehicle on 30 April 1994.

*Toole*, 488 S.E.2d at 835–36.

the state of mind of the operator, a factual question for the jury.").[8]

Plaintiff contends Defendant Jones' liability[9] arises solely from her grabbing the steering wheel, making the question in this case "whether [Defendant] Jones had a reasonable belief she was entitled to grab the steering wheel at the time of the accident or whether she became a person 'in lawful possession' of the vehicle by grabbing the steering wheel." (ECF No. 22 at 7.) Relying on *North Carolina Farm Bureau Ins. Co. v. Nationwide Mut. Ins. Co.*, 608 S.E.2d 112 (N.C. Ct. App. 2005), Plaintiff argues "it does not have a duty under the policy to defend or indemnify [Defendant] Jones" and is "entitled to a declaration that its policy does not provide coverage for [the] March 2, 2014 accident" because (1) Jones did not have permission to grab the wheel; (2) Jones was a passenger in the 2007 Honda being operated by McClendon; (3) the Nationwide Auto Policy does not cover "an insured's use of a vehicle without a reasonable belief that the insured is entitled to do so"; and (4) being "a passenger does not include implied permission to grab the steering wheel." (*Id.*) Accordingly, Plaintiff argues Defendant Jones is not covered by the Policy because she did not have express or implied permission to grab the steering wheel, and she did not grab the steering wheel "in an effort to avoid a sudden emergency." (*Id.* at 9.) Thus, Plaintiff contends "there can be no good faith, reasonable belief that [Defendant] Jones was entitled to use the vehicle as an operator by grabbing the steering wheel from the driver." (*Id.* at 9.)

In *North Carolina Farm Bureau*, the passenger grabbed the steering wheel and attempted to steer the car into a weigh station as part of a prank. 608 S.E.2d at 113. The driver, attempting to regain control of the car, swerved and collided with another car, killing the other driver. *Id.*

---

[8] This does not exclude decision of this ultimate question on summary judgment. *See supra* note 9.
[9] Plaintiff acknowledges that "the [Policy] provides liability coverage for a family member's 'use of any auto' which results in that family member being legally responsible to pay damages." (*Id.* at 3.)

11

Farm Bureau insured the driver; Nationwide insured the passenger. *Id.* After settling with their insureds, the insurance companies commenced a declaratory judgment action to determine their respective obligations. *Id.* Farm Bureau argued Nationwide was primarily liable for the damages arising from the wreck. *Id.* The companies stipulated that "[the passenger] was not a permissive user of [the driver]'s car and that the sole issue before the court was whether [the passenger] was in lawful possession of the car." *Id.* The trial court found the passenger was not in lawful possession of the car and granted Nationwide's summary judgment motion. *Id.*

The North Carolina Court of Appeals affirmed. *Id.* at 114. First, the court stated it was "persuaded by the reasoning of those states which hold that a passenger who grabs the steering wheel is actually interfering with the vehicle's operation." *Id.* at 114. As a result, the court found the passenger "was not in lawful possession of the car when she grabbed the steering wheel." *Id.* Further, the court reasoned that "even if [the passenger] were in possession of the car, the possession would not have been lawful" because of the good faith requirement under the Act. *Id.* Therefore, because "the evidence indicate[d] that [the passenger] grabbed the wheel while joking around,"[10] the court found "[c]ommon sense dictates that a reasonable passenger cannot in good faith believe that she may lawfully possess a car by suddenly grabbing the steering wheel of a moving car in this manner." *Id.*

Here, the Policy includes the same exclusion approved by the *Baer* court (and considered in *North Carolina Farm Bureau*): "We do not provide Liability coverage for any *insured*: . . . . Using a vehicle without a reasonable belief that that *insured* is entitled to do so. This exclusion does not apply to a *family member* using *your covered auto* which is owned by you." (ECF No.

---

[10] The court commented that, "If a driver suffered a medical emergency and lost control of a car, perhaps a passenger could have a good faith belief that she could take possession of the car by grabbing the steering wheel." *N.C. Farm Bureau*, 608 S.E.2d at 114.

12

31-3 at 5.) Thus, for the Nationwide Auto Policy to provide coverage for Defendant Jones' actions, she must either (1) have been a permissive user of McLendon's car or (2) have been in lawful possession of McLendon's car when Defendant Jones grabbed the steering wheel. *See N.C. Farm Bureau*, 608 S.E.2d at 113 ("Here, the parties stipulated that [the passenger] was not a permissive user of [the driver]'s car, limiting the issue before the court to whether [the passenger] was in lawful possession of the car when she grabbed the steering wheel . . . .") The parties stipulated that "[Defendant] Jones was not asked to grab the steering wheel and Jimesha McLendon did not give express or implied permission for [Defendant] Jones to grab the steering wheel." (ECF No. 22-3 at 2.) Thus, the court finds the issue before the court is limited to "whether [Defendant Jones] was in lawful possession of the car when she grabbed the steering wheel . . . ." *N.C. Farm Bureau*, 608 S.E.2d at 113.[11]

---

[11] In Defendant Jones' Answer to the Underlying Complaint, she denied engaging in horseplay with McLendon and attempting to grab the steering wheel. (ECF No. 31-3 at 1 ¶ 8, 2 ¶ 10.) At the summary judgment hearing, Defendant Jones reiterated this denial, noting that the Stipulation of Undisputed Facts does not provide that Defendant Jones *admits* to grabbing the steering wheel. Rather, the Stipulation states "*McLendon states* that as the two vehicles approached one another from opposite directions, [Defendant Jones] grabbed the steering wheel . . . ." (ECF No. 22-3 at 2 (emphasis added).) Thus, at the summary judgment hearing, Defendant Jones maintained that the Stipulation is only an agreement as to McLendon's statements about the March 2, 2014 accident, not an agreement that Defendant Jones actually grabbed the steering wheel. However, whether or not Defendant Jones' actually grabbed the steering wheel is irrelevant to this declaratory judgment action, as Plaintiff seeks a declaration that "the acts of Defendant Jones, *as alleged in the Underlying Complaint*, do not trigger the liability of the Nationwide [Auto] [P]olicy" (ECF No. 1 at 5 ¶ 21 (emphasis added).) In the Underlying Complaint, Defendant Evans alleged that "[a]s [McLendon] began to approach the car in which [Evans] was a passenger, *Defendant [Jones] was engaging in horseplay with [McLendon] and attempted to grab the steering wheel of the car* in which [Jones] was in the passenger seat." (*Id.* at ¶ 8 (emphasis added).) Moreover, if Defendant Jones did not grab the steering wheel of McLendon's car, she was merely a passenger in McLendon's car. In that situation, there would be no question that the Policy does not apply, as it would not cover McLendon's actions because she is not the name insured on the Policy or a family member of the name insured. (*See* ECF No. 22-2 at 1, 6–7.) Accordingly, for the purposes of this declaratory judgment action, the court analyzes the questions presented based on Defendant Evans' allegation that Defendant Jones grabbed the steering wheel of McLendon's vehicle.

13

As previously stated, to be in lawful possession of McLendon's car at the time of the accident, Defendant Jones had to have "a subjective, reasonable belief that [she was] entitled to use the vehicle." *Aetna I*, 381 S.E.2d at 875. Defendant Evans argues the reasonable belief exclusion "depends entirely on the subjective beliefs of McClendon and [Defendant] Jones, neither of whom have been deposed in this case." (ECF No. 28 at 3.) Further, Defendant Evans asserts "evidence gathered by police during an investigation of the [March 2, 2014 accident] support[s] a reasonable inference that [Defendant] Jones' conduct was part of McClendon and [Defendant] Jones' mutual horseplay." (*Id.*) Defendant Evans admits "the [S]tipulation [of Facts] states [Defendant] Jones grabbed the steering wheel of McClendon's car of [Defendant Jones'] own motivation and without McClendon's foreknowledge." (*Id.* at 4.) However, Defendant Evans contends "other available evidence indicates a different atmosphere within McClendon's car in the crucial moments before the collision." (*Id.*) Defendant Evans points out that marijuana was found in McClendon's car after the accident, arguing

> [t]his evidence suggests [Defendant] Jones' bizarre act of directing the car into oncoming traffic was undertaken while under the influence of marijuana. Since marijuana use is not easily concealed in this setting, this evidence also supports the conclusion that McClendon was on notice of marijuana use in her vehicle or may have even been an active participant.

(*Id.*) Defendant Evans notes the key individuals involved in the collision have not been deposed and argues "a reasonable factfinder could conclude based on this evidence that McLendon expressly or implicitly consented[12] to [Defendant] Jones' act and that, as a result, the exclusion [Plaintiff] cites does not apply." (*Id.* at 4–5.)

---

[12] The Stipulation of Facts agreed to by the parties states, "[Defendant] Jones was not asked to grab the steering wheel and Jimesha McLendon did not give express or implied permission for [Defendant] Jones to grab the steering wheel." (ECF No. 22-3 at 2 ¶ 7.) This stipulation is "binding and conclusive." *Christian Legal Soc. Chapter of the Univ. of Cal., Hastings Coll. of the Law v. Martinez*, 561 U.S. 661, 677 (2010) (quoting 83 C.J.S., Stipulations § 93 (2000)). *See also Vander Linden v. Hodges*, 193 F.3d 268, 279–80 (4th Cir. 1999) ("But a stipulation, by definition,

14

Even if, viewing the evidence in the light most favorable to Defendant Evans,[13] a jury could find Defendant Jones had a *subjective* belief that she was entitled to use McLendon's vehicle by grabbing the steering wheel, the court finds Defendant Evans has failed to put forth sufficient evidence that Defendant Jones had a *reasonable* belief she was entitled to grab the steering wheel. *See Aetna II*, 381 S.E.2d at 875–76 ("Moreover, plaintiff incorrectly relies on the position that an absence of a driver's license demonstrates that Slater could not have reasonably believed that he was entitled to drive. While such an absence may demonstrate that he knew he had no legal right to drive, that is distinguishable from *the dispositive question of Slater's reasonable belief of being*

---

constitutes '[a]n express waiver made . . . preparatory to trial by the party or his attorney conceding for the purposes of trial the truth of some alleged fact . . . *the fact is thereafter to be taken for granted; so that the one party need offer no evidence to prove it and the other is not allowed to disprove it* . . . . It is, in truth, a substitute for evidence, in that it does away with the need for evidence.' 9 Wigmore, Evidence § 2588, at 821 (Chadburn 1981) (emphasis added). *See* 2 McCormack on Evidence § 254 (West 1992) (stipulations 'have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact')."). Therefore, in accordance with the parties' stipulations, the court finds a jury could not conclude McLendon implicitly consented to Defendant Jones grabbing the steering wheel. *See id.* ("This Court has . . . refused to consider a party's argument that contradicted a joint 'stipulation [entered] at the outset of th[e] litigation.'" (alterations in original) (quoting *Board of Regents of Univ. of Wis. System v. Southworth*, 529 U.S. 217, 226, (2000))); *Moore v. Humphrey*, 101 S.E.2d 460, 466–67 (N.C. 1958) ("Where facts are stipulated, they are deemed established as fully as if determined by the verdict of a jury.")

[13] In Defendant Jones' Response to Plaintiff's Motion for Summary Judgment, Defendant Jones does not make any arguments or address the arguments in Plaintiff's Motion; she requests only that

> the court inquire fully into the record in this matter and that it issue its appropriate Order which fairly and accurately declares the relevant rights and obligations of the parties in this matter with regard to the insurance policy which is presently under consideration and any other potential insurance coverage which may be related and properly brought to the attention of the court in connection with this action.

(ECF No. 25 at 3.) Thus, the court's analysis concerns only Defendant Evans' arguments in opposition to Plaintiff's summary judgment motion.

15

*'entitled' to drive the car* based upon the permission of the person possessing the car." (emphasis added)). As explained above, the North Carolina Court of Appeals already addressed the reasonableness of grabbing the steering wheel in a similar situation in *North Carolina Farm Bureau*, in which the passenger grabbed the steering wheel while "joking around." 608 S.E.2d at 114. The North Carolina Court of Appeals stated, "[T]he evidence dictates that [the passenger] grabbed the wheel while joking around. Common sense dictates that a reasonable passenger cannot in good faith believe that she may lawfully possess a car by suddenly grabbing the steering wheel of a moving car in this manner." *Id.*

Defendant Jones, as alleged by Defendant Evans in the Underlying Complaint, grabbed the steering wheel of McLendon's car while engaging in horseplay. (ECF No. 1-1 at 5 ¶ 10.) Based on the North Carolina Court of Appeals' decision in *North Carolina Farm Bureau*, this court finds that even if, at the time of the March 2, 2014 accident, Defendant Jones believed she was entitled to grab the steering wheel of McLendon's car, this belief was unreasonable because Defendant Jones could not in good faith have believed she could lawfully possess McClendon's car by grabbing the steering wheel. *See N.C. Farm Bureau*, 608 S.E.2d at 114 ("Common sense dictates that a reasonable passenger cannot in good faith believe that she may lawfully possess a car by suddenly grabbing the steering wheel of a moving car in this manner."). Accordingly, the court grants Plaintiff's Motion for Summary Judgment (ECF No. 22).

## V. CONCLUSION

Upon careful consideration of the entire record, the court **GRANTS** Plaintiff Nationwide Property and Casualty Insurance Company's Motion for Summary Judgement (ECF No. 22) and **DECLARES** that

> the Nationwide [Auto] [P]olicy issued to Antonja Brewton[, Defendant Jones' mother,] does not provide liability coverage for any injury or damages sought

against [Defendant' Jones arising out of the [March 2, 2014 accident], and that Nationwide does not owe any duty to defend or indemnify Defendant Ambria Jones with regards to any suit and damages arising out of the [March 2, 2014 accident], together with Nationwide's costs and disbursements incurred.

(ECF No. 1 at 6 ¶ 26.)

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

November 09, 2018
Columbia, South Carolina